UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| CONNIE L. OAKES, | ) | No. CV-09-365-JPH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY |
| MICHAEL J. ASTRUE, | ) | JUDGMENT AND DENYING |
| Commissioner of Social Security, | ) | PLAINTIFF'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| Defendant. | ) | |
| | ) | |
| | ) | |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec. 14, 16.) Attorney Rebecca M. Coufal represents plaintiff; Special Assistant United States Attorney L. Jamala Edwards represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff Connie L. Oakes (plaintiff) protectively filed for disability insurance benefits (DIB) and supplemental security income (SSI) on September 25, 2006. (Tr. 86, 100.) Plaintiff alleged an onset date of January 1, 1997. (Tr. 86.) Benefits were denied initially and on reconsideration. (Tr. 51, 56.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Paul L. Gaughen on September 2, 2008. (Tr. 23-48.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 26-41.) Vocational expert Daniel McKinney also testified. (Tr. 41-47.) The ALJ denied benefits (Tr. 11-20) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -1

1   pursuant to 42 U.S.C. § 405(g).

2                     **STATEMENT OF FACTS**

3         The facts of the case are set forth in the administrative hearing transcripts, the ALJ decisions, and

4 the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

5         Plaintiff was 53 years old at the time of the hearing. (Tr. 42.) She has a bachelor's degree with

6 a major in applied psychology and a minor in drug/alcohol treatment. (Tr. 42, 330.) Plaintiff has work

7 experience in child care, as a home attendant, and as a drug counselor. (Tr. 41-42, 130, 330.) She used

8 to have a chemical dependency counselor's license. (Tr. 39.) Plaintiff testified that her predominant

9 condition is fibromyalgia. (Tr. 27.) She reported pain in muscles and nerves and problems with memory

10 and stress. (Tr. 123.) She is in pain every day due to fibromyalgia. (Tr. 28.) She has a hearing

11 impairment and wears hearing aids. (Tr. 27.) She has experienced depression and complains of memory

12 loss. (Tr. 35, 38.) Plaintiff has also complained of chronic back pain associated with degenerative disc

13 disease. (Tr. 329.)

14                     **STANDARD OF REVIEW**

15         Congress has provided a limited scope of judicial review of a Commissioner's decision. 42

16 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the

17 determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,*

18 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The

19 [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are

20 supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42

21 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

22 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599,

23 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th

24 Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate

25 to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch

26 inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be

27 upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record

28 as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877

F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -3

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff engaged in substantial gainful activity from 1998-2003. (Tr. 13.) The ALJ therefore found plaintiff was not disabled from January 1998 to December 2003, but considered the plaintiff for disability for the years 1997 and 2004 to the date of the decision. (Tr. 13.) At step two, the ALJ found plaintiff has the following severe impairments: hearing loss, plantar fasciitis, and degenerative disc disease. (Tr. 13.) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -4

medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 15.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she requires hearing assistive devices and a sit/stand option. She requires a quieter environment without concentrated noise, and may require repetition of the spoken word.

(Tr. 15.) At step four, the ALJ found plaintiff is capable of performing past relevant work as a child care worker. (Tr. 19.) Alternatively, after taking into account plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ concluded there are a significant number of jobs existing in the national economy that plaintiff can perform. (Tr. 19.) Thus, the ALJ concluded plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision.

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) failed to find fibromyalgia is a severe impairment; (2) improperly rejected the opinion of a treating physician; (3) made an unsupported credibility finding; and (4) posed an incomplete hypothetical to the vocational expert. (Ct. Rec. 15 at 4-14.) Defendant argues the ALJ: (1) properly determined fibromyalgia is not a medically determinable impairment; and (2) properly evaluated plaintiff's testimony; (3) properly evaluated the medical opinion evidence; and (4) propounded a complete hypothetical to the vocational expert. (Ct. Rec. 17 at 6-15.)

## DISCUSSION

**1.    Credibility**

Plaintiff argues the ALJ did not provide the necessary legal basis in finding Plaintiff not credible. (Ct. Rec. 15 at 10-13.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -5

Cir. 1991)   If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346.   The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).   The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02 (9th Cir. 1999).   In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599.   The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

In this case, the ALJ identified no affirmative evidence of malingering, so clear and convincing reasons supported by substantial evidence are required to properly reject plaintiff's testimony.[1]   Plaintiff seems to suggest the ALJ provided no reasons for discrediting Plaintiff's pain

---

[1]Defendant argues "only specific reasons are required to reject a claimant's symptoms testimony" and that the court must defer to a "specific reasons" standard found in S.S.R. 96-7p. (Ct. Rec. 17 at 9-10.)  Social Security Rulings are issued to clarify the Commissioner's regulations and policy.  They are not published in the federal register and do not have the force of law.  However, under the case law, deference is to be given to the Commissioner's interpretation of the Regulations. *Ukolov v. Barnhart*, 420 F.3d 1002 n.2 (9th Cir. 2005); *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  S.S.R. 96-

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -6

testimony.  (Ct. Rec. 15 at 13.)  However, in assessing plaintiff's alleged pain symptoms, the ALJ considered several factors.  (Tr. 17.)

        The ALJ first considered the objective evidence in assessing plaintiff's credibility. (Tr. 17.)  While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2).   The ALJ observed that plaintiff stated in October 2004 that she had no low back pain and she did "a lot of hiking."  (Tr. 17, 217, 219.)  In fact, plaintiff's complaints of foot pain were attributed to "overuse" by Dr. Hough.  (Tr. 219.)  The first reference to back-related pain was in March 2006, when plaintiff complained of pain down her left leg and numbness in the foot. (Tr. 227.)  Dr. Koeske, a treating physician, diagnosed lumbar radiculopathy and recommended plaintiff avoid prolonged sitting, bending at the waist, mopping, and lifting more than ten pounds.  (Tr. 227.)   Later

---

7p provides:  "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and any other reviewers the weight given . . . and the reasons for that weight."  S.S.R. 96-7p.  The ruling says the reasons have to be more than just "specific", they have to be "sufficiently specific to make clear", which is similar to "clear and convincing."   A long line of cases, including some which predate S.S.R. 96-7p, are established law which set forth "clear and convincing reasons" as the requisite basis for a negative credibility finding.  *E.g.*, *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007); *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Swenson v. Sullivani*, 876 F.2d 683, 687 (9th Cir. 1989); *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984).  It is noted that case law also includes the requirement that reasons for a negative credibility determination be "specific" and supported by substantial evidence in addition to meeting the clear and convincing standard.  *Id.*  Thus, S.S.R. 96-7p and precedent established by case law are not mutually exclusive.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -7

1    that month, the results of an MRI were "basically totally normal" and revealed "very mild"

2    degenerative changes according to another treating physician, Dr. Hough. (Tr. 228.) On exam, Dr.

3    Hough noted plaintiff's lower back was a little sore, but she had excellent flexion, negative straight

4    leg raising, and good neurosensory function. (Tr. 228.) In May 2007, Dr. Hough noted tenderness in

5    plaintiff's lower back, but also found good range of motion and a normal neurosensory exam. (Tr.

6    265.) By 2008, none of the office visit records mention back pain or degenerative disc disease as a

7    condition or complaint. (Tr. 284, 294, 297, 303, 305, 323, 326, 333, 338.) The objective evidence

8    does not support allegations of a disabling back condition or the limitations alleged by plaintiff. This

9    is relevant consideration in assessing plaintiff's credibility.

10        The ALJ also considered relatively conservative course of treatment recommended by Dr.

11   Hough. (Tr. 17.) The type, dosage, effectiveness and side effects of medication taken to alleviate

12   pain or other symptoms as well as the medical treatment received to relieve pain or other symptoms

13   are relevant factors in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§

14   416.929(c)(3)(iv) and 416.929.(c)(3)(v). Dr. Hough indicated there was no reason to pursue an EMG

15   and suggested physical therapy or chiropractic manipulation in addition to a hydrocodone

16   prescription. (Tr. 228.) At an initial evaluation in June 2007, Plaintiff's physical therapist noted a

17   slight reduction in lumbar mobility, but did not reproduce the symptoms plaintiff complained about.

18   (Tr. 257.) After four treatments, plaintiff had reduced pain and hydrocodone usage. (Tr. 254.)

19   However, plaintiff was discharged from therapy because she did not initiate contact after returning

20   from summer vacation. (Tr. 255.) The ALJ noted that the physical therapy records indicate plaintiff

21   experienced beneficial results but only attended for a short time. (Tr. 17.) The ALJ is permitted to

22   consider a lack of treatment in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

23   2005). It is reasonable to conclude that plaintiff's failure to pursue additional treatment which

24   provides relief from symptoms indicates those symptoms are not as disabling as alleged. The ALJ

25   properly considered the conservative treatment and the improvement in symptoms after physical

26   therapy as factors in the credibility determination.

27        Another factor considered by the ALJ in assessing plaintiff's credibility is the consistency of

28   plaintiff's own statements. In making a credibility evaluation, the ALJ may rely on ordinary

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -8

techniques of credibility evaluation. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). A strong indicator of credibility is the consistency of the individual's own statements made in connection with the claim for disability benefits and statements made to medical professionals. S.S.R. 96-7p. The ALJ pointed out that at the hearing, plaintiff testified she can only sit for ten minutes and that she cannot lift a gallon of milk without pain, but in a Function Report completed in December 2006, she indicated no limitations with sitting and the ability to lift up to 20 pounds. (Tr. 31-32, 33, 127.) The ALJ also observed that plaintiff reported she was unable to squat, bend or kneel and memory and immunity problems, but the medical evidence does not support these statements. (Tr. 18, 127, 223, 330.) Plaintiff argues these are "minor discrepancies,"[2] but they are significant in assessing plaintiff's credibility and alleged limitations. These inconsistencies could reasonably be interpreted as evidence of exaggeration of symptoms, particularly since plaintiff fails to identify any evidence explaining the apparent increase in pain and symptoms. In addition, the ALJ pointed out that Dr. Scottolini, who reviewed the medical evidence, opined that plaintiff exaggerates her symptoms and that there is little objective clinical evidence to support and establish her alleged problems. (Tr. 18, 205.) As a result, the ALJ properly considered the inconsistencies in the degree of plaintiff's reported symptoms as a reason for rejecting her pain complaints.

Plaintiff does not argue that the factors considered by the ALJ were improper or address the ALJ's credibility determination with any specificity. The ALJ considered appropriate factors in assessing plaintiff's credibility, and the ALJ's interpretation of the evidence was reasonable. Thus, the ALJ provided clear and convincing reasons supported by substantial evidence in rejecting plaintiff's credibility and the ALJ did not err.

**2. Step Two**

Plaintiff argues the ALJ committed legal error by failing to find fibromyalgia is a severe impairment. (Ct. Rec. 15 at 6-8.) At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her

---

[2]This argument is made in Plaintiff's letter brief to the Appeals Council dated December 1, 2008, which plaintiff incorporates by reference in her summary judgment memorandum. (Ct. Rec. 15 at 4, Tr. 6.)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -9

physical or mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice.  20 C.F.R. § 416.908.  The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations.  *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two.  Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  S.S.R. 85-28.  The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).  "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."  S.S.R. 85-28.  Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting."  *Id.*

Further, even where non-severe impairments exist, these impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities.  20 C.F.R. § 416.929.  If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process.  *Id.*  As explained in the Commissioner's policy ruling, "medical evidence alone is evaluated in order to assess the effects of the impairments on ability to do basic work activities."  S.S.R. 85-28  Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence.

In this case, the ALJ specifically discussed the medical record pertaining to fibromyalgia in finding it is not a severe impairment.  (Tr. 14.)  The first mention of fibromyalgia in the record is in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -10

October 2004 when Dr. Hough, plaintiff's treating physician, mentioned a history of fibromyalgia. (Tr. 217.) Fibromyalgia does not appear in the record again until June 2006, when Dr. Hough noted the diagnosis and that plaintiff was stable. (Tr. 230.) In early 2007, plaintiff complained of pain due to fibromyalgia, but also reported becoming concerned about becoming addicted to hydrocodone for the pain. (Tr. 239, 244.) Dr. Hough again noted plaintiff was stable and continued amitryptilline. (Tr. 245.) The ALJ observed that despite these references to fibromyalgia, there is no evidence of clinical assessment or consistent treatment for the symptoms. (Tr. 14.)

As noted above, an impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms. 20 CFR § 416.908, 416.928(a). Signs are anatomical, physiological, or psychological abnormalities which can be observed, apart from a claimant's stated symptoms, and must be shown by medically acceptable clinical diagnostic techniques. 20 C.F.R. § 416.928(b). As defendant points out, there is no evidence in the record that an acceptable medical source applied any specific diagnostic criteria in diagnosing plaintiff with fibromyalgia. (Ct. Rec. 17 at 8.) The American College of Rheumatology established classification criteria for fibromyalgia, including both a history of widespread pain and pain in 11 of 18 tender points on digital palpation. Frederick Wolfe et al., *The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia*, 33 ARTHRITIS AND RHEUMATOLOGY. 160, February 1990.[3] In *Rollins v. Massanari*, the Ninth Circuit recognized:

---

[3]Found at www.rheumatology.org/practice/clinical/classification/fibromyalgia/fibro.asp. A provisional set of criteria for clinical diagnosis of fibromyalgia was published in May 2010 and includes the calculation of a "widespread pain index" and a "symptom severity score" along with other criteria. Frederick Wolfe et al., *The American College of Rheumatology Preliminary Diagnostic Criteria for Fibromyalgia and Measurement of Symptom Severity*, 62 ARTHRITIS CARE AND RESEARCH 600, 607 (2010), http://www.rheumatology.org/practice/clinical/classification/fibromyalgia/2010_preliminary_diagnost ic_criteria.pdf. The provisional criteria was not, of course, available as a diagnostic tool during the period at issue.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -11

[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and 'the only symptom that discriminates between it and other diseases of a rheumatic character' multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

*Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (quoting *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). The record is not clear as to the basis of the diagnosis in this case, and the ALJ reasonably interpreted the ambiguity as plaintiff's own reported history. (Tr. 14.) Plaintiff points to her testimony that Dr. Hough diagnosed her with fibromyalgia "maybe" a year or two before 1993 by doing a "touch exam in the tender spots where I was hurting." (Tr. 26.) When asked how many tender spots Dr. Hough found, plaintiff testified, "I'm not sure, I'm not sure. Probably eight or ten, something like that." (Tr. 27.) First, the ALJ made a properly supported negative credibility finding, so an argument dependent on plaintiff's testimony alone is not reliable. Second, plaintiff's testimony is vague at best. Third, even if plaintiff's testimony is accepted as true, it does not further establish fibromyalgia, since at least 11 tender points are required to support classification as fibromyalgia under the 1990 classification criteria and by plaintiff's own equivocal testimony, only eight or ten were identified. There is virtually no evidence beyond plaintiff's own statements establishing fibromyalgia as a medically determinable impairment, and the ALJ finding to that effect is supported by the record.

Plaintiff suggests the ALJ had a duty to develop the record with respect to her fibromyalgia diagnosis. (Tr. 6.) In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of*

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -12

*Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998). An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150.  In this case, the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. *See Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001).

Even if other records establish a convincing fibromyalgia diagnosis, plaintiff has established no "severe" or "disabling" limitations resulting from fibromyalgia.  No treating or examining provider opined or even suggested that fibromyalgia symptoms were limiting or disabling.  Indeed, at plaintiff's last comprehensive examination in January 2008, Dr. Hough noted a normal physical examination and made no comment about fibromyalgia except to continue medications.  (Tr. 286-87.) Through the remainder of 2008, office visit records do not mention any complaint or discussion of fibromyalgia.  (Tr. 294, 297, 303, 305, 323, 326, 333, 338.)  These facts suggest fibromyalgia has little impact on plaintiff's ability to perform basic work-related activities.  As a result, the ALJ did not err by failing to find fibromyalgia is a severe impairment.

**3.     Opinion Evidence**

Plaintiff argues the ALJ improperly evaluated the medical and psychological opinion evidence. (Ct. Rec. 13 at 14.)  In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the treating or examining  physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -13

The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31. Cases have upheld the rejection of an examining or treating physician based on part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

Plaintiff fails to argue which physician's opinion was improperly rejected. (Ct. Rec. 15 at 8-10.) Plaintiff refers generally to "the opinions and diagnoses of the Rockwood Cheney Medical Clinic" without specifically mentioning a particular physician's opinion or discussing the records with specificity.[4] (Ct. Rec. 15 at 9.) However, the only medical opinion specifically rejected by the ALJ is the opinion of Dr. Koeske. (Tr. 18.) In March 2006, Dr. Koeske reported plaintiff complained

---

[4]As noted by defendant, plaintiff's argument is vague and the court could decline to address it for lack of specificity. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). However, because only one physician opinion was specifically rejected by the ALJ, it appears plaintiff's argument intended to address Dr. Koeske's note indicating plaintiff's activities should be limited. Furthermore, no other physician offered an opinion about plaintiff's limitations or assessed plaintiff's ability to do work-related activities.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -14

of pain down the left leg, which she reported as restricting when she bends at the waits to mop at work. (Tr. 227.)  Dr. Koeske instructed her to avoid bending at the waist, mopping and lifting more than 10 pounds. (Tr. 227.)   The ALJ assigned greater weight to the opinion of Dr. Scottolini, a reviewing physician,[5] than to Dr. Koeske's opinion. (Tr. 18.)  After reviewing the medical record,[6] Dr. Scottolini opined that plaintiff is leading an active and economically productive lifestyle and that he believes she is capable of a higher level of exertional activity than that stated in the RFC. (Tr. 205.)  He found little objective clinical evidence to support and establish the anatomical or pathophysiological basis for her many problems. (Tr. 205.)  His opinion conflicts with opinion of Dr. Koeske which suggests limitations on plaintiff's physical activity.  Thus, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence in rejecting Dr. Koeske's opinion.

In rejecting Dr. Koeske's opinion in favor of Dr. Scottolini's, the ALJ cited the lack of objective evidence supporting the limitations noted by Dr. Koeske.  An ALJ may discredit treating

---

[5]Plaintiff argues that Dr. Scottolini "is not even a consultative examiner as he never met with Oakes, examined her or even saw her (he was not a medical expert at the hearing)." (Ct. Rec. 15 at 9.) It is well established that the opinion of a reviewing, nonexamining physician is entitled to weight. "Both the regulations, 20 C.F.R. § 416.927(d)(1), and our precedent, *see Pitzer*, 908 F.2d at 506 n. 4, state that the conclusion of a nonexamining expert is generally entitled to less weight than the conclusion of an examining [or treating] physician. However, giving the examining [or treating] physician's opinion *more* weight than the nonexamining expert's opinion does not mean that the opinions of nonexamining sources and medical advisors are entitled to *no* weight." *Andrews*, 53 F.3d at 1041.  As noted above, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it.  *Id.* at 1043; *Lester*, 81 F.3d at 830-31.

[6]Plaintiff points out that Dr. Scottolini reviewed the "few records available" to May1, 2007, suggesting that Dr. Scottolini's opinion is not supported by the totality of the record. (Ct. Rec. 15 at 9.) However, plaintiff fails to address the MRI results or specifically point to any objective evidence in the record contradicting Dr. Scottolini's opinion.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -15

physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Furthermore, a physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Fair*, 885 F.2d at 604. The ALJ pointed out that Dr. Koeske did not have MRI evidence before him. (Tr. 18.) A March 2006 MRI revealed mild degenerative changes and no significant stenosis. (Tr. 250.) Plaintiff's other treating physician at the Rockwood Clinic, Dr. Hough, observed that the MRI is "basically totally normal." (Tr. 228.) The record establishes that Dr. Koeske had no objective basis for recommending limitations and must have relied upon plaintiff's pain report of symptoms, which the ALJ properly discredited. On the other hand, Dr. Scottolini was able to review plaintiff's MRI along with the other medical evidence in forming an opinion. As such, it was reasonable to conclude that Dr. Koeske's statement of plaintiff's limitations was not supported by the evidence, which is a specific, legitimate reason for rejecting the opinion.

Additionally, the ALJ considered the results of the conservative treatment prescribed. The ALJ pointed out that Dr. Hough recommended physical therapy for treatment of plaintiff's back pain, and as noted above, and plaintiff's symptoms improved after several sessions. (Tr. 228, 254.) This indicates that even if Dr. Koeske's restrictions were justified at the time he made them, her symptoms and the limitations assessed did not and would not continue with relatively conservative treatment.

The ALJ's duty is to resolve evidentiary conflicts, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1985) and substantial evidence supports his resolution of the conflicting opinions in this case. The ALJ cited substantial evidence in addition to the opinion of Dr. Scottolini in rejecting Dr. Koeske's assessment. Based on the MRI evidence and plaintiff's improvement after conservative treatment, the ALJ reasonably concluded that the limitations identified by Dr. Koeske were unsupported, and that Dr. Scottolini's consideration of all of the evidence rendered his opinion more persuasive. The ALJ gave specific, legitimate reasons for rejecting the opinion of Dr. Koeske and the reasons are supported by substantial evidence.

**4.    Hypothetical**

Plaintiff argues the hypothetical posed to the vocational expert was incomplete because it

"ignored" limitations assessed by Dr. Koeske and "ignored" plaintiff's testimony regarding her limitations.[7] (Ct. Rec. 15 at 14.)  An ALJ is free to accept or reject restrictions in a hypothetical that are not supported by substantial evidence.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001); *Magallenes*, 881 F.2d at 756-57.  Plaintiff's step five argument relies on her previous arguments regarding the ALJ's consideration of plaintiff's credibility and the opinion of Dr. Koeske, which were discussed and rejected *supra*.  As a result, plaintiff's step five argument must also fail.  The limitations identified by the ALJ were included in the RFC and the hypothetical to the vocational expert.  Therefore, the hypothetical to the vocational expert was legally sufficient and the ALJ did not err.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment **(Ct. Rec. 16)** is **GRANTED.**

2.    Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant.  Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED January 3, 2011.


S/ JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE

---

[7]As discussed *supra*, the ALJ did not "ignore" plaintiff's testimony; rather, the ALJ found it not entirely credible.  Similarly, the ALJ did not "ignore" limitations assessed by plaintiff's treating physician, but instead provided specific, legitimate reasons supported by substantial evidence for rejecting them.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT -17